UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 14-1704(DSD/FLN)

Angela Kristie Hey,

    Plaintiff,

v.           **ORDER**

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

    Defendant,

    Lionel H. Peabody, Esq., Peabody Law Office, P.O. Box 10, Duluth, MN 55801, counsel for plaintiff.

    Pamela Marentette, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, counsel for defendant.

This matter is before the court upon the objection by plaintiff Angela Kristie Hey to the July 29, 2015, report and recommendation of United States Magistrate Judge Franklin L. Noel (R&R). In the R&R, the magistrate judge recommends that the court deny the motion for summary judgment by Hey and grant the motion for summary judgment by defendant Carolyn W. Colvin, Acting Commissioner of Social Security (Commissioner). After a de novo review, and for the following reasons, the court overrules Hey's objection and adopts the report and recommendation in its entirety.

**BACKGROUND**

Hey seeks judicial review of the decision to deny her application for Social Security disability insurance benefits and supplemental security income. The background of this action is fully set forth in the report and recommendation, and the court briefly summarizes the history of the present action. Hey filed an application for disability insurance benefits on May 17, 2011, and subsequently filed an application for supplemental security income on June 1, 2011. A.R. at 86-87. Hey initially alleged an onset date of August 1, 2010. Id. at 174. The Commissioner denied the applications initially and again upon reconsideration. Id. at 32, 110, 115, 126, 132. Hey then requested a hearing before an administrative law judge.

On February 26, 2013, at the hearing before the ALJ, Hey amended her alleged onset date to February 1, 2012. Id. at 42. On March 13, 2013, the ALJ affirmed the denial of Hey's applications. The Appeals Council denied Hey's request for review on April 24, 2014, making the ALJ's determination the final decision of the Commissioner.

On May 30, 2014, Hey filed this action, seeking judicial review of the ALJ's determination to deny benefits. Both parties moved for summary judgment. On July 28, 2015, Magistrate Judge Noel recommended granting the Commissioner's motion. Hey objects.

**DISCUSSION**

## I.  Standard of Review

The court reviews the report and recommendation of the magistrate judge de novo, and the findings and decisions of the ALJ for substantial evidence on the record as a whole. See 28 U.S.C. § 636(b)(1)(c); Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the [ALJ's] conclusion." Byes v. Astrue, 687 F.3d 913, 915 (8th Cir. 2012) (citation omitted). On review, the court considers "both evidence that detracts from and evidence that supports the Commissioner's decision." Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) (citation omitted). The court, however, may not "reverse the Commissioner's decision simply because there is evidence supporting a different result." Hall v. Chater, 109 F.3d 1255, 1258 (8th Cir. 1997) (citation omitted). "If the evidence supports two inconsistent conclusions, one of which is that reached by the Commissioner's conclusion, [the court] must affirm the decision." Id. at 1258. Moreover, a court may not substitute its judgment for that of the ALJ. Fastner v. Barnhart, 324 F.3d 981, 983 (8th Cir. 2003). The court will disturb the ALJ's decision to deny benefits only if "the record contains insufficient evidence to support the outcome." Nicola v. Astrue, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted).

**II.  Disability Determination**

The Commissioner employs a five-step sequential analysis in making a disability determination.  See 20 C.F.R. § 404.1520(a)(4). The ALJ must consider (1) whether the claimant has engaged in substantial gainful activity during the alleged disability period, (2) the medical severity of the impairments, (3) whether the impairments meet or medically equal the criteria of any enumerated impairments, (4) the claimant's residual functional capacity (RFC) and past relevant work and (5) whether the impairments and other relevant circumstances preclude the claimant from engaging in other work.  Id. at (a)-(f); see Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

At step one, the ALJ found that Hey had not engaged in substantial gainful activity during the alleged disability period beginning on February 1, 2012.  A.R. at 25.  Next, at step 2, the ALJ determined that Hey had a severe impairment of autosomal-dominant familial cerebellar ataxia.  Id. (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).  At step three, the ALJ determined that this impairment does not meet or medically equal any of the enumerated impairments.  Id. at 27.  Because he found that Hey's impairment did not meet or equal an enumerated an impairment, the ALJ made an assessment of Hey's RFC and found that Hey had the RFC to perform light work with the following limitations:

> [S]he requires a sit/stand option in which she can stand and walk short distances up to 1-1.5 hours at a time and 4 hours total in an 8-hour workday, with no limitations in sitting. If she works on the feet 4 hours total, she can spend the balance of the day in a seated position or otherwise work the entire shift seated. She is limited to occasional postural adjustments, but cannot climb ladders, ropes, or scaffolds. She can occasionally lift and carry about 15 pounds, but is unable to lift or carry frequently even negligible amounts of weight. She cannot tolerate temperature extremes, excessive humidity, work at unprotected heights, dangerous work settings, unusual work stressors, fast pace production work, or driving as part of an occupation, but can get to the job site. She does not require an assistive device to ambulate.

Id. at 27. In determining Hey's RFC, the ALJ found Hey's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Id. at 28-29. The ALJ granted limited weight to the opinions of Dr. Engberg, Hey's primary care physician, but attributed significant weight to the opinion of consultative examiner Dr. Johnson and persuasive weight to the opinions of the state-agency physicians who reviewed this matter. See id. at 29-30. At step four, the ALJ found that Hey was able to perform her past work as a telemarketer, and in the alternative, at step five found that she was capable of making a successful adjustment to other sedentary unskilled positions, such as tile work and jewelry preparing. Id. at 30. As a result of these findings, the ALJ determined that Hey was not disabled within the meaning of the Social Security Act, and therefore denied her application for disability insurance benefits and supplemental security income. Id. at 32.

5

In reviewing the ALJ's decision, the magistrate judge found that the ALJ did not err in determining Hey's RFC. R&R at 18. The magistrate judge also found that the ALJ fairly and completely developed the record. Id. at 24. Further, the magistrate judge found that the ALJ's credibility determination of Hey was supported by substantial evidence. Id. at 26. Finally, the magistrate judge found that the ALJ properly found that Hey's impairment did not meet the requirements of 20 C.F.R. Part 404, Subpart P, App. 1 § 11.17 (Listing 11.17). Id. at 28.

Hey argues that the ALJ and the magistrate judge erred in (1) determining Hey's RFC and questioning the vocational expert accordingly, (2) evaluating Hey's credibility, and (3) determining that Hey's impairment does not meet the requirements of Listing 11.17.

**A.  Residual Functioning Capacity**

Hey first argues that the ALJ's finding of her residual functional capacity is not supported by substantial evidence on the record as a whole. Hey points to three specific alleged errors the ALJ made in this determination. First, Hey claims that the hypothetical the ALJ posed to the Vocational Expert (VE) failed to include all of her limitations. Second, she argues that the ALJ should have taken into account her complaints about double vision and migraines when determining her RFC. Third, Hey argues that the ALJ erred in affording "little weight" to her treating physician

while weighing the credibility of doctors with conflicting medical testimony.

**1. The ALJ's Hypothetical to the VE**

"Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence." Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996). A hypothetical posed to a VE is therefore considered sufficient when it "sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001). The hypothetical need include only those impairments that the ALJ has found are substantially supported by the record as a whole. Roe, 92 F.3d at 675.

As more fully set out in the R&R, at Hey's hearing, the ALJ posed a detailed hypothetical to the VE, including an indication that "[t]he individual will be awkward, and, and, and not swift in doing work-like activities requiring her to walk." A.R. at 58. Hey argues that this hypothetical was deficient because it did not indicate a need for an assistive device for ambulation. However, the ALJ need not be precise in his descriptions of the applicant's impairments. Rather, the phrases used by the ALJ should "capture the concrete consequences" of Hey's deficiencies. See Roe, 92 F.3d at 677.

The substantial evidence on the record indicates that the ALJ described Hey's impairments to the VE in a way that explained their

7

effect on her capacity to work.  Indeed, following the ALJ's hypothetical, the VE asked a clarifying question to inquire as to whether the individual was capable of walking.  A.R. at 59.  The ALJ responded, "at the option of the worker she may need an assistive device."  Id.  After taking into account Hey's use of an assistive device, the VE found that Hey could perform seated work.  Id. at 61-62.  Specifically, the VE found that such a worker could perform Hey's past work as a telemarketer, as well as the occupations of inspection table worker and jewelry preparer polisher.  Id.  It is therefore clear that the ALJ understood that the hypothetical included Hey's use of an assistive device, and the ALJ's hypothetical to the VE was proper.

### 2. The ALJ's Determination that Hey's Migraines and Double Vision Are Not Severe Medically Determinable Impairments

Hey next argues that the ALJ should have concluded that her migraines and double vision were severe medically determinable impairments and given them more credence in his RFC analysis.  The burden of proving the existence of a medically severe impairment is on the plaintiff.  Brown v. Shalala, 15 F.3d 97, 99 (8th Cir. 1994).  A medically determinable impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  To be "severe," an impairment must significantly limit the ability of the individual to perform basic work activities.  20 C.F.R. §§ 404.1520(c),

416.920(C). On the other hand, an impairment is not considered "severe" where medical evidence establishes only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. Id. §§ 404.1521, 416.921.

The ALJ found that Hey's migraines did not constitute a severe medically determinable impairment for two reasons. First, Hey's MRI taken March of 2012 did not demonstrate any abnormal signals or evidence of migraines. A.R. at 481. Second, the ALJ noted that Hey testified her headaches were effectively treated with prescriptive medication, and the nausea and vomiting associated with the migraines was also eased with medication. Id. at 47-48.

Hey argues that "migraines cannot be demonstrated by MRI." To support this argument, Hey cites to Strickland v. Barnhart. In Strickland, the Seventh Circuit found that negative neurological tests for migraines did not undercut the plaintiff's claims. Strickland v. Barnhart, 107 Fed. App'x 685, 2004 WL 1873223, at *4 (7th Cir. Aug. 19, 2004). However, other courts within this circuit have accepted ALJ conclusions that MRIs can confirm the presence of migraines and severe headaches. See, e.g., Sadler v. Colvin, No. C12-2092, 2013 WL 5675869, at *14 (N.D. Iowa, Oct. 13, 2013) (indicating that the presence of white matter is often associated with migraines); Yost v. Astrue, No. 09-3148, 2010 WL 1268050, at *2 (W.D. Mo. Apr. 1, 2010)(indicating that after plaintiff complained of migraines, she was sent to the hospital for

9

an MRI, the results of which suggested she was suffering from a Chiari I malformation, resulting in severe headaches). Moreover, regardless of whether MRI alone can prove or disprove the existence of migraines, "Hey simply has not shown clinical or laboratory diagnostic evidence that her migraines or vision-related problems would interfere with basic work activities such that a classification of 'severe' is appropriate." R&R at 21. Her statements about her migraines cannot, without more, be considered conclusive evidence of disability. See Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir. 1992)("[P]roof of a disabling impairment must be supported by at least some objective medical evidence.").

Additionally, the MRI results were not the only reason the ALJ found Hey's migraines were non-severe. He also relied on the fact that her migraines are responsive to treatment. See A.R. at 26 ("Moreover, she testified she experienced migraines 1-3 times a week, but admitted they went away with medication. She also reported to Dr. Johnson improved nausea and vomiting with medication."). Hey argues the frequency of her migraines means they cause her to be nonfunctional often enough that they preclude employment and are "severe despite responding to treatment." If her migraines "can be controlled by treatment or medication, [they] cannot be considered disabling." Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (citation omitted). The ALJ therefore did not err in determining Hey's migraines were treatable and non-severe.

10

### 3. Weight to treating physician

Hey argues that the ALJ and magistrate judge did not afford adequate weight to the testimony of her treating physician, Dr. Engberg. However, "[a] treating source's opinion is not inherently entitled to controlling weight." Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013). A treating physician's opinion "is entitled to controlling weight only to the extent it is consistent with medically acceptable clinical or laboratory diagnostic data." Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007). "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." Prosch v. Apfel, 201 F.3d 1010, 1014-15 (8th Cir. 2000). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (citation omitted).

Here, Dr. Enberg opined in 2013 that Hey could stand and walk less than two hours in an eight-hour work day, lift very little, and could not sustain work activity because she could not stand well, had poor strength and coordination, and disorganization of motor function in her extremities. A.R. at 499. The ALJ did not adhere to this physical assessment in his determination of Hey's RFC, and Hey argues that the ALJ failed to give good reasons for granting little weight to Dr. Engberg. ECF No. 11, at 28.

The ALJ gave little weight to Dr. Engberg's opinion because it was inconsistent with the other medical evidence in the record, including the examinations from Drs. McKee and Johnson. See A.R. at 29. "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." Prosch, 201 F.3d at 1013-14.  Contrary to Dr. Engberg's findings, Dr. Johnson found Hey

> demonstrated only mild difficulty with getting on and off the exam table, tandem walking, squatting, and heel-to shin movements, with clear speech, negative Romberg with 'just a hint of minimal wavering, no localized weakness, the ability to walk across the exam room without her walker, a mildly wide-based gait, and full use of her hands with the ability to button, pick up a coin, and open a door.

A.R. at 29, 531-32.  Dr. Johnson determined that Hey had the ability to perform sedentary work. Id. at 534-39. Dr. McKee found that scans of Hey's brain were normal, and she had no cognitive decline or ataxia of the extremities. Id. at 473. Dr. McKee went on to state, "Her MRI is normal. Her symptoms consisting of intermittent sudden loss of balance are not consistent with the diagnosis. In fact, her presentation appears to be functional." Id. at 474.  Additionally, the ALJ found that Dr. Johnson's testimony was consistent with the evidence on the record, including examination evidence, Hey's activities of daily living, and her improvements with physical therapy. Id. at 30.

After review, the court finds that the ALJ did not err in discounting the opinions of the treating physician. Indeed, the ALJ declined to give controlling weight to Dr. Engberg for a good and well-supported reason. See Goff v. Barnhart, 421 F.3d 785, 790-91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion."). As a result, the court finds that the ALJ did not err in granting little weight to Dr. Engberg's testimony, and overrules that portion of the objection. The court also finds that the ALJ's calculation of RFC was supported by substantial evidence on the record.

**B.   Hey's Credibility**

Next, Hey argues that the ALJ and magistrate judge failed to evaluate her credibility appropriately, resulting in a credibility finding that she claims is not supported by substantial evidence on the record as a whole. When determining the credibility of a claimant's testimony and subjective complaints, an ALJ must examine "1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; [and] 5. functional restrictions." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), vacated on other grounds by Bowen v. Polaski, 476 U.S. 1167 (1986). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." Id.

Therefore, "[i]f an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, [courts] will normally defer to that judgment." Finch v. Astrue, 547 F.3d 933, 935-36 (8th Cir. 2008) (citations omitted).

The ALJ determined that Hey's statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with objective evidence in the record and were therefore "not entirely credible." A.R. at 28. The ALJ cited to several instances where Hey's claims were not supported by medical evidence or were inconsistent with her own reports of her activities of daily living. Id. at 29. When the ALJ finds that the severity of complainant's claims are inconsistent with the complainant's work history, daily activities, medical opinions, and personal demeanor at the hearing, the ALJ's resolution of conflicting testimony is supported by substantial evidence on the record as a whole. Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001).

The ALJ found that there was inconsistency between Hey's reported limitations and the findings of physicians, and found that "the medical examination evidence fails to support the severity of limitations reported." A.R. at 28-29. Specifically, the ALJ found that though Hey has indicated she has trouble with slurred speech, Dr. Engberg did not observe slurring or word searching, and Dr. McKee also described clear speech. Id. at 28. Though Hey

14

indicated that she could not perform tasks using her hands, Dr. Johnson reported she was able to button and pick up a coin. Id. at 29. While Hey testified that she has a problem with dizziness and falling that causes her to be unable to walk, Dr. Sinaki reported that Hey was able to walk on her toes and heels if supported, and by February of 2013 she was tolerating treatment well, with functional gains and improved balance. Id. at 28. Dr. Johnson also indicated that Hey demonstrated only mild difficulty getting on and off the exam table, squatting, tandem-walking, and with heel-to-shin movements, and had clear speech. Id. at 29.

The ALJ also found discrepencies between Hey's testimony and her activities of daily living. The ALJ noted, for example, that Hey stated that she "can't look at a computer screen for any longer than 45 minutes," but also that she watched TV and played video games for several hours per day. Id. at 29, 47. Additionally, Hey reported difficulties with double vision and walking more than 100 feet, but admitted she was able to make meals, vacuum, sweep, shop for groceries, and drive short distances. Id. As a result, there is substantial evidence in the record from which the ALJ could conclude that Hey's subjective testimony was not wholly credible. Thus, Hey's argument is unavailing and the court overrules that portion of her objection.

**C.   Listing 11.17**

Finally, Hey argues that the ALJ erred in finding that her

15

impairment doesn't meet the requirements of Listing 11.17 because he improperly weighed the medical opinion evidence in the record. "The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). Listing 11.17 requires an impairment that is a "[d]egenerative disease not listed elsewhere . . . [w]ith: A. Disorganization of motor function as described in 11.04B; or B. Chronic brain syndrome. Evaluate under 12.02." 20 C.F.R. Part 404 Subpt. P, App. 1, § 11.17. Hey relies solely on 11.17A, arguing that she meets the criteria of 11.04B. Under 11.04B, the claimant must have "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." Id. § 11.04B. The ALJ found that Hey did not meet or equal Listing 11.17. A.R. at 27. Hey argues that she meets these criteria because she cannot ambulate without an assistive device.

The ALJ, however, found that the medical evidence suggesting that Hey required an assistive device was mainly from Drs. Engberg and Sinaki, physicians to whom the ALJ granted little weight. See A.R. at 29. In contrast, the medical opinion evidence of Drs. Johnson and McKee, to whom the ALJ attributed "significant weight," indicates that Hey was not impaired to the degree required by Listing 11.17. Id. at 30. The ALJ determined that the evidence offered by Drs. Johnson and McKee was consistent with the evidence

16

in the record, including examination evidence, Hey's activities of daily living, and her improvements with physical therapy. Id. at 30. Given the substantial evidence in the record that the ALJ considered, the ALJ did not err in finding that Hey's impairments did not meet the criteria for Listing 11.17. Therefore, the court overrules that portion of the objection.

After a de novo review, the court finds that the ALJ's decision is supported by substantial evidence on the record as a whole. As a result, the court overrules Hey's objection to the R&R.

**CONCLUSION**

Therefore, **IT IS HEREBY ORDERED** that:

1. Plaintiff's objection [ECF No. 22] to the magistrate judge's report and recommendation is overruled;

2. The magistrate judge's report and recommendation [ECF No. 16] is adopted in its entirety;

3. Plaintiff's motion for summary judgment [ECF No. 10] is denied;

4. Defendant's motion for summary judgment [ECF No. 12] is granted; and

    5.    The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 30, 2015

                                      s/David S. Doty
                                      David S. Doty, Judge
                                      United States District Court